UNITED STAES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
In re:

DENNIS V. LEONE and                              Chapter 7
SUSAN LEONE,                                     Case No. 05-16603


                         Debtors.
-------------------------------------------------------------
MICHAEL J. O'CONNOR,
Chapter 7 Trustee,
                         Plaintiff,

           vs.                                   Adv. No. 07-90199

DENNIS V. LEONE and
SUSAN LEONE,
                         Defendants.
-------------------------------------------------------------
Appearances:

The Law Office of Richard Croak                  Richard Croak, Esq.
*Attorneys for the Debtors-Defendants*
314 Great Oaks Blvd.
Albany, NY 12203

O'Connor, O'Connor, Bresee & First, PC           Michael J. O'Connor, Esq.
*Attorneys for Chapter 7 Trustee-Plaintiff*
20 Corporate Woods Blvd.
Albany, NY 12211

Hon. Robert E. Littlefield, Jr., Chief United States Bankrutpcy Judge

### MEMORADUM-DECISION AND ORDER

Before the court is the adversary proceeding commenced by the Chapter 7 trustee,

Michael J. O'Connor, Esq. (the "Trustee"), against Dennis V. Leone and Susan Leone (the

"Debtors") objecting to the Debtors' claim of an annuity exemption pursuant to New York

Debtor and Creditor Law section 283 and seeking denial of the Debtors' discharge pursuant to

§§ 727(a)(2)(A), (a)(2)(B), (a)(3), (a)(4), (a)(5), and (a)(6).[1]

In the amended adversary complaint, filed December 4, 2007, the Trustee asserts, *inter alia*, that the Debtors failed to disclose the purchase of an annuity with the cash set forth as an asset on Schedule B of their petition. On December 7, 2007, the Debtors filed an answer to the amended complaint asserting a counterclaim for attorney's fees, which was eventually withdrawn. The Debtors filed a motion to dismiss the complaint arguing the Trustee's objections to discharge and to the Debtors' exemption were time-barred and that the complaint failed to state a cause of action. The motion was denied. A trial in this proceeding was conducted on June 9, 2008, at which time the court received a number of exhibits into evidence. In addition, the Trustee called Andrea E. Celli, the Chapter 13 trustee, to testify. The Trustee did not call the Debtors to testify and instead indicated he was relying on his exhibits, including the answers to interrogatories and letters written by the Debtors, to provide the evidence needed for the court to find in his favor. The Debtors declined to call any witnesses or take the stand in their own defense, believing the Trustee had failed to meet his burden. Following the trial, the court provided the parties with the opportunity to file memoranda of law in support of their positions.

The court, having heard the sworn testimony and arguments of counsel and having considered the parties' pleadings and submissions, makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 157(b)(1), 157(b)(2)(B), 157(b)(2)(J), and 1334.

## FACTS

---

[1] Unless otherwise noted, all statutory references are to title 11 of the United States Code, 11 U.S.C. § 101 *et. seq.*, prior to the enactment of Bankruptcy Abuse Prevention and Consumer Protection Act of 2005.

The Debtors refinanced the mortgage against their residence on or about July 18, 2005, and received $35,573.95. (Pl.'s Ex. D.) Approximately $35,559 was deposited into the Debtors' checking account at Wilber National Bank on July 25, 2005 and, then, approximately $33,000 was moved a few days later into a savings account. (Pl.'s Ex. I.) The Debtors had hoped to pay off their debt with the proceeds from the refinancing and get back on their feet. (Pl.'s Ex. G.) Instead, the Debtors found themselves getting deeper into debt. (*Id.*) The Debtors sought the advice of bankruptcy counsel in early September 2005. (*Id.*) According to the Debtors, they were advised "to put as much money as possible from the refinance, into an annuity" as it "would be safe and protected from bankruptcy." (*Id.*)

The Debtors signed their chapter 13 petition on September 12, 2005, declaring under penalty of perjury that they had read the petition and the information contained therein was true and correct to the best of their knowledge. (Pl.'s Ex. A.) They listed a savings account at Wilber National Bank with a balance of $27,500 as an asset on Schedule B, Personal Property. (*Id.*) The Debtors did not claim an exemption for the cash. Checking account records produced by the Debtors establish that on September 12, 2005, a total of $24,920 was deposited into their account. (Pl.'s Ex. I.) Meanwhile, on that same date, Mr. Leone issued a check payable to Northwestern Mutual for $21,000 and indicated on the memo line that it was for the opening of an annuity account. (*Id.*) An account statement issued by Northwestern Mutual confirms receipt of $21,000 to fund an annuity with a contract date of September 16, 2005, in the name of Mr. Leone. (Pl.'s Ex. J.) The Debtors' chapter 13 petition was filed on September 17, 2005. (Bankruptcy Case No. 05-16603 ("Main Case"), ECF No. 1.) The Debtors' check payable to Northwestern Mutual cleared their account on September 21, 2005, four days after their petition was filed. (Pl.'s Ex. I.)

At the time the Debtors' petition was filed, Mr. Leone had been employed as a school bus driver for approximately four years, and Mrs. Leone was self-employed as a cleaning woman. (Pl.'s Ex. A.) In addition, the Debtors were attempting to operate a small Bed and Breakfast, which at the time had not generated any income. (*Id.*) The Debtors' combined net monthly income was $3,503. (*Id.*)

The Debtors' initial meeting of creditors with the Chapter 13 trustee was held on October 26, 2005.[2] There is no indication on the court's docket for the Debtors' underlying bankruptcy case that the meeting was adjourned. On December 1, 2005, the Chapter 13 trustee filed an objection to confirmation on the basis that she needed additional information regarding the money the Debtors received in connection with the refinancing of their mortgage, as well as documentation with respect to the cash listed on Schedule B and the answer to question three on the Statement of Financial Affairs.[3] (Main Case, ECF No. 12.) According to the testimony of the Chapter 13 trustee, confirmation was adjourned to allow the Debtors time to provide her with the requested information.[4] The Chapter 13 trustee testified further that in February 2006, she was informed by the Debtors' attorney that there was no money left in the savings account referenced on Schedule B and that it had been transferred to an annuity, which the Debtors were claiming as exempt. On February 16, 2006, the Debtors filed an amended Schedule B to indicate a reduction of their cash from $27,500 to $500 and the addition of a jointly owned $27,500

---

[2] The court takes judicial notice of the record in the main case. *See In re Burdick,* 191 B.R. 529, 537 n.7 (Bankr. N.D.N.Y. 1996) (citing *Matter of Holly's, Inc.,* 172 B.R. 545, 553 n.5 (Bankr. W.D. Mich. 1994)) ("A bankruptcy judge may take judicial notice of the court's records."); *In re Calder,* 907 F.2d 953, 955 n.2 (10th Cir. 1990).

[3] Question 3 on the Statement of Financial Affairs requires a list of "all payments on loans, installment purchases of goods or services, and other debts, aggregating more that $600 to any creditor, made within 90 days immediately preceding the commencement of this case." (Pl.'s Ex. A.) In response, the Debtors disclosed a $1,550 payment made to Direct Merchants and a $2,129.67 payment made to the Internal Revenue Service. (*Id.*)

[4] Neither party obtained a transcript of the June 2008 trial; thus, the court has relied solely on the electronic recording of the proceeding.

annuity. (Defs.' Ex. A.) They also filed an amended Schedule C on the same date to claim an

exemption on behalf of Mrs. Leone of the $27,500 annuity pursuant to New York Debtor &

Creditor Law section 283(1). (*Id.*) Neither the Chapter 13 trustee nor any creditor filed an

objection to the annuity exemption claimed by the Debtors.

 The Debtors' chapter 13 plan was ultimately confirmed at a hearing held on February 2,

2006. The confirmation order was entered on March 14, 2006. (Pl.'s Ex. L.) The Debtors'

confirmed plan provides for bi-weekly payments of $184.61 for a term of sixty months, with a

dividend for unsecured creditors of not less than 10 percent. (*Id.*) In addition, the confirmation

order provides, in part:

> IX. Notwithstanding any other provision of the plan or Order Confirming
> Plan, no article of property, real or personal, with a value of more than
> $2,500 may be sold or otherwise disposed of without prior consent of the
> Trustee.

(*Id.*)

 The Debtors made post-petition payments on their refinanced mortgage through May

2006, when they came to the realization that they could no longer afford their residence. (Pl.'s

Ex. F.) The Debtors' attempts to sell their home had proven unfruitful. (*Id.*) As a result, the

Debtors voluntarily converted their chapter 13 case to one under chapter 7 on September 12,

2006. (Main Case, ECF No. 24.) The Trustee was appointed on September 17, 2006. During

the course of the chapter 7 proceeding, the Debtors' mortgage holder obtained an order

permitting it to proceed with an action to foreclose the Debtors' mortgage. (Main Case, ECF No.

54.)

 A meeting of creditors pursuant to 11 U.S.C. § 341 was conducted by the Trustee on

October 20, 2006, and adjourned numerous times until it was eventually concluded on June 16,

2008. At the October 20, 2006, meeting of creditors, the Debtors informed the Trustee that the

5

information on their original Schedule B was not accurate, because they had purchased an
annuity, as reflected on their Amended Schedule B, with the cash prior to filing their chapter 13
petition on the advice of counsel. Upon learning of the conversion of the cash to the annuity, and
subsequently learning that the Debtors had withdrawn the bulk of the money from the annuity
post-petition, the Trustee began a quest to reconstruct the Debtors' financial history commencing
with the refinancing of their mortgage.

In response to the Trustee's inquiries, the Debtors provided the Trustee with a letter and
"Affidavit,"[5] both dated December 26, 2006 (the "Letter" and the "Affidavit," respectively),
attempting to explain and itemize how the money from the refinancing of their mortgage and the
annuity was spent. (Pl.'s Exs. F and G.) The Debtors indicate in the Letter that the information
was being provided for the fourth time and that copies of their mortgage and bank statements
were enclosed. (Pl.'s Ex. F.)

According to the Debtors, the proceeds from their refinancing, namely $33,027, was
deposited into their savings account. (*Id.*) From this amount, $21,000 was used to purchase the
annuity.[6] (*Id.*) The balance was used for repairs to their vehicle and their daughter's vehicle, car
insurance, taxes owed to the Internal Revenue Service, mortgage payments, and credit card debt.
Money was also invested in their failing Bed and Breakfast for things such as advertising and
upkeep. (Pl.'s Exs. F and G.) The Debtors also advised the Trustee that they did not have
mortgage statements after September 2005, because their mortgage company ceased sending
them once the bankruptcy was filed. (Pl.'s Ex. F.) Instead, the Debtors produced their bank

---

[5] The Debtors' "Affidavit" does not take the traditional form. While it is dated and signed by the Debtors, there is
no jurat indicating the Affidavit was sworn to. Nonetheless, it was offered by the Trustee at trial and received
without objection, so the court will accept it at face value.

[6] No explanation was given as to why the Debtors' amended Schedule B indicates the annuity had a value of
$27,500.

statements and cancelled checks to document that they were paying their mortgage. (*Id.*) The
Letter also confirms the Debtors contacted their attorney in August 2006 about converting their
chapter 13 case to chapter 7 after they concluded they could no longer afford their home. (*Id.*)
They did not hear from their attorney until early September. (*Id.*) Meanwhile, they had depleted
all their savings and the bulk of the annuity "on the house and vehicle repair and gas combined
with [their] daughter's college education." (*Id.*) More specifically, the Debtors made the
following withdrawals totaling $17,500 from the annuity: $400 on the sixteenth day of every
month to reimburse themselves for the monthly plan payment they were making to the Chapter
13 trustee from their wages; $5,200 on April 1, 2006, to cover expenses incurred in moving from
their home and into an apartment in anticipation of their mortgage being foreclosed; $500 on
April 28, 2006 for their daughter to use as a deposit for a used vehicle; and $7,000 on August 15,
2006 to purchase two used 4-cylinder vehicles to replace the two newer 8-cylinder vehicles that
they would be surrendering in connection with the conversion of their bankruptcy case. (*Id.*)

Pursuant to the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines
served on the Trustee and all parties-in-interest, the deadline to file a complaint objecting to the
Debtors' discharge was December 19, 2006. (Main Case, ECF No. 28.) Over the course of the
next year, the Trustee filed five successive motions for orders extending his time to file a
complaint objecting to the Debtors' discharge by ninety days. (Main Case, ECF Nos. 33, 39, 57,
65, 70.) The court ultimately extended the Trustee's time to object one final time from
September 19, 2007 to October 17, 2007. (Main Case, ECF No. 76.) In addition, the Trustee
filed a motion to extend his time to object to the Debtors' claimed exemptions. No opposition to
the motion was filed, and the motion was granted by default. As a result, the Trustee's time to
object to the Debtors' exemptions was extended to the later of ninety days from December 13,

2006, or thirty days from the closing of the meeting of creditors.  (Main Case, ECF No. 42.)

The instant adversary proceeding was commenced on October 16, 2007.

During the discovery process, the Debtors provided the Trustee with answers to

interrogatories and responses to request for documents, which included bank statements,

cancelled checks, and annuity documents.  (Pl.'s Exs. H and I.)  The Debtors responded to

various questions regarding how money from the refinancing of their mortgage was spent and

why they funneled a portion of those proceeds into the annuity as follows:

Q:    State what the purpose of the annuity was.

A:    [Our attorney] advised us to put as much money as possible from
       the refinance into the annuity to protect it from bankruptcy.
       . . . .

Q:    State the purpose for which the annuity was purchased.

A:    [Our attorney] advised us to put as much money from the refinance
       into the annuity as possible to protect it from bankruptcy.

(Pl.'s Ex. H, Nos. 16, 25.)

With respect to the Debtors' disclosure of the annuity, the Debtors answered as follows:

Q:    State whether the annuity was disclosed in the bankruptcy petition.

A:    Yes.

Q:    State the date in which the annuity was disclosed in any amended
       schedules.

A:    We stated from the beginning and continue to acknowledge the annuity.

Q:    Provide an explanation as to why the annuity was not disclosed in the
       bankruptcy petition.

A:    Incorrect, the annuity was disclosed from day one by us.  Unless it was an
       oversight on the part of our attorneys . . . and not disclosed.

Q:    State whether the transfer of funds from the refinance proceeds was
       disclosed in the statement of financial affairs.

A:      Yes.

Q:      State the date in which the transfer of funds from the refinance proceeds to
        purchase the annuity was disclosed and any amended statement of affairs
        filed.

A:      The day we filed bankruptcy in Sept. 2005.

(Pl.'s Ex. H, Nos. 9-13.)

## ARGUMENTS

The Trustee contends that the Debtors' exemption for the annuity should be denied.

Alternatively, if the court were inclined to allow the exemption, the Trustee asserts it is invalid as

the exemption was claimed on behalf of Mrs. Leone, but the annuity is in Mr. Leone's name.

Moreover, even if the annuity is exempt, the Trustee argues the Debtors' exemption should be

limited to $5,000 pursuant to New York Debtor & Creditor Law section 283(l) as the annuity

was purchased within six months of the Debtors' bankruptcy filing.

The Trustee also seeks denial of the Debtors' discharge under multiple theories. First, the

Trustee contends that the Debtors violated either §§ 727(a)(2)(A) or (a)(2)(B), depending upon

whether the court determines the annuity was purchased pre- or post-petition. Under either

theory, the Trustee alleges that the statements made by the Debtors in the Letter, the Affidavit,

answers to interrogatories and responses to requests for documents satisfy his burden to establish

that the Debtors' purchase of the annuity was a transfer of property with the intent to hinder,

delay, or defraud creditors. Second, the Trustee argues that the Debtors' failure to provide a full

accounting of the proceeds they received from the refinancing of their mortgage and the

subsequent withdrawals from the annuity during the term of the chapter 13 case justifies denial

of the Debtors' discharge under § 727(a)(3). The Trustee asserts that the Debtors' discharge

should also be denied under § 727(a)(4) as their failure to disclose the purchase of the annuity

with non-exempt funds in their Statement of Financial Affairs ("SOFA") constitutes a false oath.

Furthermore, the Trustee asserts that there was inadequate disclosure by the Debtors regarding

their use of the proceeds from the refinancing of their mortgage in their SOFA. Additionally, the

Trustee contends that the Debtors' failure to provide documentation or an adequate explanation

for the diminution of the annuity justifies denial of discharge under § 727(a)(5), as they failed to

satisfactorily explain the loss of assets or deficiency of assets to meet their liabilities. Finally,

the Trustee alleges that the Debtors' dissipation of the annuity during the pendency of their

chapter 13 case without the Chapter 13 trustee's permission violated the provision in the

confirmation order prohibiting them from selling or disposing an asset with a value in excess of

$2,500. Thus, the Trustee asserts the Debtors' discharge should also be denied under

§ 727(a)(6).

     The Debtors assert as an affirmative defense that the Trustee's objection to the annuity

exemption is time-barred because the Chapter 13 trustee failed to object within thirty days after

their amended schedule C was filed. Additionally, the Debtors contend that, given the chain of

events, their schedules at the time of filing were entirely accurate, as the annuity was not funded

until their check cleared post-petition. Furthermore, the Debtors argue that there is no evidence

of fraud, as the funds received from the refinancing were derived from an exempt asset, namely,

their homestead. Thus, in effect, they argue there could be no fraudulent intent because the

sequence of events involved the conversion of an exempt asset to a non-exempt asset and then

back to an exempt asset. The Debtors assert that the real issue is whether they failed to obey an

order of the court by making withdrawals from the annuity during the chapter 13 proceeding.

They acknowledge that if the annuity had been an estate asset, an argument could be made that

their discharge should be denied under § 727(a)(6). However, because the annuity was claimed

as exempt and no objection was interposed by the Chapter 13 trustee, the Debtors contend that

they were entitled to disburse those funds as they wished.

The Debtors also assert that the Trustee's § 727 causes of action are time barred because

the Trustee submitted proposed orders to the court in connection with his motions to extend time

to object to discharge containing erroneous and unauthorized extensions. Additionally, the

Debtors argue that the Trustee's § 727 causes of action are barred under the doctrine of laches

because the Trustee engaged his firm to prosecute these causes of action on March 7, 2007, but

did not file his complaint until October 10, 2008. They claim that in the absence of a justifiable

excuse for delay the complaint should be dismissed.

## DISCUSSION

The court is asked to resolve eight causes of action, six aimed at depriving the Debtors of

a discharge, one regarding the disputed exemption, and the last seeking a money judgment. The

court will first address the Trustee's objection to the annuity exemption claimed by the Debtors

and the request for a money judgment. Then, the court shall address the merits of the specific

§ 727 causes of action.

## I.    Objection to Annuity Exemption

The commencement of a bankruptcy case creates an estate comprised of all of a debtor's

interest in property as of the filing date. 11 U.S.C. § 541(a). A debtor may claim certain

property exempt from the bankruptcy estate, *see* 11 U.S.C. § 522(b)(1), and that property "will

be excluded from the bankruptcy estate '[u]nless a party in interest' objects." *Schwab v. Reilly*,

130 S.Ct. 2652, 2657 (2010); 11 U.S.C. § 522(l). If there are no objections, "the property

claimed as exempt . . . is exempt." 11 U.S.C. § 522(l). This is true even if there is no colorable

basis for the exemption. *Taylor v. Freeland & Kronz*, 503 U.S. 638, 643–44 (1992). Federal

Rule of Bankruptcy Procedure 4003(b)[7] provides, in pertinent part:

> [A] party in interest may file an objection to the list of property claimed as exempt
> only within 30 days after the meeting of creditors held under § 341(a) is concluded
> or within 30 days after any amendment to the list or supplemental schedules is
> filed, whichever is later. The court may, for cause, extend the time for filing
> objections if, before the time to object expires, a party in interest files a request for
> an extension.

Fed. R. Bankr. P. 4003(b) (2207).[8]

Although the Trustee did not file a motion objecting to the Debtors' annuity exemption,

his first cause of action seeks the disallowance of the exemption. *See Liberty State Bank & Trust

v. Grosslight (In re Grosslight)*, 757 F.2d 773, 777 (6th Cir. 1985) (timely filing of adversary

proceeding treated as an objection to claim of exemptions). Prior to addressing the merits of the

objection, the Debtors contend that the Trustee's objection is untimely.

At the time this case was commenced, courts were split on whether the conversion of a

chapter 13 case to one under chapter 7 provided a second opportunity to object to exemptions

claimed by the debtor in the chapter 13 case.[9] One line of cases holds the thirty-day period to

object to a debtor's claimed exemptions starts anew upon the conversion. *See, e.g., In re*

---

[7] Unless otherwise noted, the Federal Rules of Bankruptcy Procedure will be referred to simply as "Rules" or "Rule."

[8] Subdivision (b) of Rule 4003 was rewritten in 2008 to include four paragraphs. The amendment to the Rule was not in effect at the times relevant here.

[9] This issue was put to rest with the amendment of Federal Rule of Bankruptcy Procedure 1019, effective December 1, 2010. The amended Rule redesignates 1019(2) as part (2)(A), and adds a new part (2)(B), that provides as follows:
> (B) A new time period for filing an objection to a claim of exemptions shall commence under Rule 4003(b) after conversion of a case to chapter 7 unless:
> > (i) the case was converted to chapter 7 more than one year after the entry of the first order confirming a plan under chapter 11, 12, or 13; or
> > (ii) the case was previously pending in chapter 7 and the time to object to a claimed exemption had expired in the original chapter 7 case.
Fed. R. Bankr. P. 1019(2)(B) (as amended Dec. 1, 2010).

*Alexander*, 236 F.3d 431 (8th Cir. 2001); *In re Brown*, 375 B.R. 362 (Bankr. W.D. Mich. 2007);

*In re Hopkins*, 317 B.R. 726, (Bankr. E.D. Mich. 2004); *In re Fish*, 261 B.R. 754 (Bankr. M.D.

Fla. 2001); *In re Mims*, 249 B.R. 378 (Bankr. D.N.J. 2000) (re-conversion of chapter 13 case to

chapter 7). These cases find support in § 348(a), which provides that the conversion of a chapter

13 case to one under chapter 7 "constitutes an order for relief under the chapter to which the case

is converted, but . . . does not effect a change in the date of the . . . order for relief." 11 U.S.C.

§ 348(a). The courts reason that because the conversion constitutes an order for relief, a new

meeting of creditors must be held in the converted chapter 7 case under § 341(a) and Rule

2003(a). Then, because there is nothing in Rule 4003(b) limiting the "meeting of creditors" to

the first meeting conducted in the chapter 13 case, they conclude parties in interest have thirty

days from the conclusion of the meeting of creditors in the converted chapter 7 case to object to a

debtor's exemptions.

The other line of cases holds that conversion of a chapter 13 case to chapter 7 does not

restart the thirty-day period to object to exemptions. *See, e.g.*, *Bace v. Babitt (In re Bace)*, 07

Civ. 2421, 2008 WL 800672 (S.D.N.Y. 2008); *In re Rogers*, 278 B.R. 201 (Bankr. D. Nev.

2002); *DiBraccio v. Ferretti (In re Ferretti)*, 230 B.R. 883 (Bankr. S.D. Fla. 1999), *aff'd without

opinion, Dibraccio v. Ferretti*, 268 F.3d 1065 (11th Cir. 2001); *In re Beshirs*, 236 B.R. 42

(Bankr. D. Kan. 1999); *see also In re Bell*, 225 F.3d 203 (2d Cir. 2000) (conversion from chapter

11 to chapter 7). These cases point out that Rule 1019(2) is silent regarding a renewed objection

period upon conversion. They also find support for their holdings in § 348(a), which provides

that a conversion of a case does not change the date of the filing, commencement of the case, or

the order for relief except for those instances specifically provided for by §§ 348(b) and (c), not

applicable here.

The court, however, need not weigh in on this issue, as the Trustee obtained an order on default extending his time to object to discharge until thirty days from the closing of the meeting of creditors. In addition to not opposing the Trustee's motion, the Debtors did not move to reconsider or seek relief from the default order pursuant to Rules 9023 or 9024. The Trustee closed the meeting of creditors on June 16, 2008. The adversary proceeding was filed prior to that date on October 16, 2007. Thus, the objection was timely under the court's order.

Exempt property is determined on the date of the filing of the petition. *In re Karr*, 278 Fed. Appx. 741 (9th Cir. 2008). Although the Debtors issued a check for the annuity pre-petition, it was not honored by the drawee bank until post-petition. This court previously evaluated the question of whether a check issued pre-petition, but cashed post-petition signifies dispersal of estate property and found, in accordance with New York law, that "a check is not considered absolute payment until it is honored by the drawee bank." *In re Parker*, Ch. 7 Case No. 05-17912, 2008 WL 906570, at *4 (Bankr. N.D.N.Y. Apr. 3, 2008). Thus, the $21,000 used to fund the annuity, and not the annuity, was property of the estate at the time of filing.[10] As a result, there was no annuity for the Debtors to exempt at the time of filing. The Trustee's objection to the Debtors' exemption is timely based upon the default order extending his time to object. The objection, however, has been rendered moot because the annuity was removed from the bankruptcy estate during the chapter 13 proceeding, long before the Trustee was appointed, by the Debtors' exemption claim to which no timely objection was filed.[11]

## II.    Monetary Judgment

---

[10] The record is silent as to why the non-exempt cash, which was disclosed in the petition, was not marshaled during the chapter 13 proceeding for the benefit of creditors.
[11] Presumably, if an objection had been filed within thirty days after the Debtors filed their amended Schedule C during the chapter 13 proceeding, the objection would have been sustained and the value of the annuity made available for the benefit of creditors.

14

The Trustee's eighth cause of action seeks a money judgment against the Debtors for the dissipation of non-exempt estate assets post-petition. More specifically, the Trustee is seeking a judgment in an amount equal to the annuity that the Debtors invaded and spent prior to the conversion of their case. The Trustee provides no authority or statutory basis in support of his request for a monetary judgment. Seemingly, the Trustee is seeking a money judgment because the annuity no longer exists. Pre-conversion, however, the annuity was deemed exempt because no timely objection was filed. It was not until the Debtors converted their case and almost eight and a half months had passed that the Trustee filed his motion to extend his time to object. It was at that point that the Debtors were put on notice that there may be an issue with their claimed exemption. Meanwhile, the Debtors had already invaded and spent most of the annuity, which was, at the time, an exempt asset. Thus, the relief sought by the Trustee is denied as there was no dissipation of non-exempt estate assets.

## III.    Denial of Discharge Under 11 U.S.C. § 727

The fresh start provided by a discharge is reserved for "the honest but unfortunate debtor." *Grogan v. Garner*, 498 U.S. 279, 286--87 (1991). In essence, the Trustee's causes of action under subsections of § 727(a) contest the Debtors' honesty. Denial of a debtor's discharge, "imposes an extreme penalty for wrongdoing" and, thus, § 727 "must be construed strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *In re Chalasani*, 92 F.3d 1300, 1310 (2d Cir. 1996) (quoting *In re Adlman*, 541 F.2d 999, 1003 (2d. Cir. 1976)). The Trustee has the burden of proving the essential elements of each of the § 727(a) causes of action by a preponderance of the evidence. Fed. R. Bankr. P. 4005; *McCarthy v. Nandalall (In re Nandalall)*, 434 B.R. 258, 265 (Bankr. N.D.N.Y. 2010) (citation omitted).

## A. Transfer or Concealment of Property: § 727(a)(2)(A) and (B)

The Trustee's second and third causes of action are plead in the alternative and seek denial

of the Debtors' discharge under § 727(a)(2), which provides that a discharge shall not be granted

if

> the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the
> estate charged with custody of property under this title, has transferred, removed,
> destroyed, mutilated, or concealed, . . .
>> (A) property of the debtor, within one year before the date of the filing of
>> the petition; or
>> (B) property of the estate, after the date of the filing of the petition.

11 U.S.C. §§ 727(a)(2)(A), (B).

The § 727(a)(2)(A) cause of action is premised on the Debtors' purchasing the annuity

immediately prior to filing and failing to disclose its existence in their schedules. The

§ 727(a)(2)(B) cause of action is based upon the annuity being purchased with estate assets post-

petition. Because the court has determined that the cash used to fund the annuity, and not the

annuity, was property of the estate at the time of filing, there was no pre-petition transfer. As a

result, the Trustee's § 727(a)(2)(A) claim fails.

Section 727(a)(2)(B) is intended to deny a discharge to a debtor who fails to disclose

transactions regarding his assets post-petition. *In re Bostick*, 400 B.R. 348, 356 (Bankr. D.

Conn. 2009). To prevail under § 727(a)(2)(B), the party objecting to discharge must demonstrate

by a preponderance of the evidence that: "(1) the debtor, (2) transferred or concealed (3) property

of the bankruptcy estate (4) with the intent to hinder, delay or defraud the creditor (5) after the

filing of the bankruptcy petition." *In re Pisculli*, 408 Fed. Appx. 477, 479 (2d Cir. 2011). As the

court determined that the annuity was purchased post-petition, the first, second, third, and fifth

elements of § 727(a)(2)(B) are satisfied. The issue is whether in purchasing the annuity, the

Debtors intended to deceive or mislead creditors.

16

As a debtor ordinarily will not admit to intentionally hindering, delaying, or defrauding creditors, fraudulent intent may be shown by circumstantial evidence, or by inferences drawn from a course of conduct. *In re DeMartino*, 448 B.R. 122, 128 (Bankr. E.D.N.Y. 2011) (citing *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir.1983)). Intent to defraud can also be drawn from certain "badges of fraud," including "(1) the lack or inadequacy of consideration; (2) a family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (6) the general chronology of the events and transactions under inquiry. *In re D'Amico*, No. 05-19217, 2008 WL 4552806, at *4 (Bankr. N.D.N.Y. Oct. 9, 2008) (citation omitted). Most often, a "determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor." *Republic Credit Corp. I v. Boyer (In re Boyer)*, 367 B.R. 34, 45 (Bankr. D. Conn. 2007) (internal quotation marks and citation omitted).

This case presents the unusual situation where the Trustee did not subpoena the Debtors to testify, and the Debtors chose not to testify on their own behalf. In place of trial testimony, the court is left with the Debtors' Letter (Pl.'s Ex. F), Affidavit (Pl.'s Ex. G), answers to interrogatories (Pl.'s Ex. H), and responses to requests for documents (Pl.'s Ex. I), which were all received into evidence without objection. The four documents appear to have been prepared by the Debtors, as opposed to their counsel. To establish the requisite intent, the Trustee points to the Debtors' declaration contained in their answers to interrogatories that they were advised to put as much money from the refinancing of their mortgage into the annuity as possible to protect

it from bankruptcy. The Debtors, however, also indicate that this was done on the advice of counsel. The court recognizes that "reliance upon advice of counsel" is not an "impenetrable shield" behind which a debtor may continually hide. *In re Dubrowsky*, 244 B.R. 560, 575 (E.D.N.Y. 2000). "The advice of counsel is not a defense when it is transparently clear that the advice is improper." *Id.* (citing *In re Kelly*, 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)). After reading the four documents prepared by the Debtors, the court finds the Debtors to be forthcoming and credible. The Debtors believed that the purchase of the annuity was permissible and in conformance with the advice they received from their attorney. There is nothing in the record to counter this. Thus, the court cannot conclude that the Debtors' reliance on advice of counsel was not reasonable and in good faith.

Additionally, the Debtors did not act in a secretive manner; Debtors revealed their actions. Creditors and the Chapter 13 trustee were on notice that the Debtors had over $20,000 in cash when they filed. Then, with the filing of the Debtors' amended Schedules B and C, they were put on notice that at some point instead of cash, the Debtors had an annuity that they claimed as exempt. Despite these disclosures, no one objected during the course of the Debtors' chapter 13 case. While, the Chapter 13 trustee did raise some questions concerning the Debtors' cash in her objection to confirmation, her objection was resolved and the case confirmed. After the Debtors converted to chapter 7, the annuity was disclosed to the Trustee at the meeting of creditors. Based upon the slim record before it, the court cannot find the requisite intent on the part of the Debtors to sustain a cause of action under § 727(a)(2)(B).

### B.   *Failure to Maintain Records: § 727(a)(3)*

Section 727(a)(3) provides that a discharge shall be denied when

> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or
> preserve any recorded information, including books, documents, records, and

papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case.

11 U.S.C. § 727(a)(3). The purpose and intent of this section is to "make the privilege of discharge dependent on a true presentation of the debtor's financial affairs." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (internal quotation marks and citation omitted). Notably, "[a] denial of a discharge under § 727(a)(3) does not require a showing of intent; only a showing that the debtor's records are not reasonable under the circumstances." *Bronfman v. O'Hara (In re O'Hara)*, Ch. 7 Case No. 08-12108, Adv. No. 09-90055, 2011 WL 1467927, at * 7 (Bankr. N.D.N.Y. Apr. 18, 2011) (citation omitted). "The Bankruptcy Code does not specifically require a debtor seeking a discharge to maintain . . . an impeccable system of bookkeeping." *In re Jacobowitz*, 296 B.R. 666, 670 (Bankr. S.D.N.Y. 2003), *aff'd*, 308 B.R. 429 (S.D.N.Y. 2004) (quoting *Meridian Bank v. Alten*, 958 F.2d 1226, 1230 (3d Cir. 1992)). Rather, when an objection under § 727(a)(3) is raised, the court must determine "whether a debtor's records are adequate to explain his finances and, if not, whether this failure is justified." *Id.* "Whether a debtor's failure to appropriately keep or preserve books and records is justified is a question of 'reasonableness in the particular circumstances.'" *Pergament v. DeRise (In re DeRise)*, 394 B.R. 677, 688 (Bankr. E.D.N.Y. 2008) (citing *Shiboleth v. Yerushalmi (In re Yerushalmi)*, Ch. 7 Case No. 07-72186-478, Adv. No. 08-8037-478, 2008 WL 4107491, at *7 (Bankr. E.D.N.Y. 2008)).

The Trustee alleges that the Letter (Pl.'s Ex. F), the Affidavit (Pl.'s Ex. G), answers to interrogatories (Pl.'s Ex. H), and responses to request for documents (Pl.'s Ex. I) establish that the Debtors failed to preserve or produce records. He argues that not only did the Debtors fail to provide documentation until after this proceeding was commenced, but also that the

documentation provided is insufficient to ascertain the Debtor's financial condition and transactions involving the proceeds of their refinancing.

Upon closer examination of the Letter, the Affidavit, and answers to interrogatories, the court is satisfied that the Debtors did provide an adequate accounting of the proceeds from the refinancing of their mortgage under the circumstances. The court also notes that the Letter and Affidavit were provided to the Trustee in late December 2006, approximately ten months prior to commencement of the adversary proceeding. In the Letter, the Debtors explain that they have no mortgage statements because their lender stopped sending them after commencement of the bankruptcy, but they do indicate which of their checks represent mortgage payments.[12] The Debtors go on to describe in detail both how the money from the refinance and the money withdrawn from the annuity account was spent. (Pl.'s Ex. F.) This accounting is further corroborated by the Debtors' answers to interrogatories and the documents they produced in response to the Trustee's First request for Production of Documents. (Pl.'s Exs. H and I.) While the court did not have the benefit of the Debtors' live testimony, the Trustee's exhibits reveal a detailed picture of their financial history, albeit not fully corroborated by formal statements issued by financial institutions. The Debtors do, however, provide bank statements and cancelled checks normally maintained by consumer debtors. In light of the Debtors' employment and income, and the principle of liberally construing objections to discharge in favor of a debtor, the court concludes that the Debtors have provided an adequate accounting of their financial history under the circumstances.

## C.    *False Oath or Account: § 727(a)(4)(A)*

---

[12]The Trustee did not provide any of the documents that were allegedly attached to the Letter, but because he made no representation that they were not attached, the court accepts the Letter as true.

Section 727(a)(4)(A) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account." 11 U.S.C. § 727(a)(4)(A). Under this section, the plaintiff must establish that: (1) the debtor made a statement under oath, (2) such statement was false, (3) the debtor knew it was false, (4) the statement was made with fraudulent intent, and (5) the statement related materially to the bankruptcy. *Levine v. Raymonda (In re Raymonda)*, Ch. 7 Case No. 99-13523, Adv. No. 99-91199, slip op. at 4--5 (Bankr. N.D.N.Y. Feb. 9, 2001).

As it has been determined that the Debtors did, in fact, have cash when they filed as a result of the check for the annuity not being cashed until post-petition, Debtors' Schedule B setting forth cash instead of the annuity was accurate. As for the failure to set forth in the petition how the proceeds from their refinancing were spent and the inaccuracy as to the amount of the annuity, the issue is not whether the Debtors' petition and schedules contained inaccuracies, but whether the Debtors intended to deceive or mislead creditors.

The Trustee must show that the omitted information in the Debtors' schedules occurred because the Debtors exhibited a reckless indifference for the truth or intended to mislead their creditors, not because of mere carelessness or misunderstanding. *Harris v. D'Amico (In re D'Amico)*, Ch. 7 Case No. 05-19217, Adv. No. 06-90188, 2008 WL 4552806, at *6 (Bankr. N.D.N.Y. Oct. 9, 2008) (citing *In re Brundege*, 359 B.R. 22, 30 (Bankr. N.D.N.Y. 2007)). While a debtor has an affirmative duty to file accurate schedules and amended schedules, "if items were omitted from the debtor's schedules because of an honest mistake or upon the honest advice of counsel, such a false declaration may not be sufficiently knowingly and fraudulently made so as to result in a denial of discharge." *In re Ptasinski*, 290 B.R. 16, 23 (Bankr. W.D.N.Y. 2003).

In response to the Trustee's inquiry of whether the transfer of funds from the refinance was disclosed in the Statement of Financial Affairs, the Debtors replied, "Yes."[13]  There is no further evidence of the circumstances surrounding the Debtors' completion of the schedules. The Debtors provided the Letter and the Affidavit to the Trustee prior to this adversary proceeding being commenced.  The Letter indicates that this was the "fourth time we are sending you the same information."  In both the Letter and the Affidavit, the Debtors lay out for the Trustee, in their own words, where the proceeds from their refinancing went.  The Debtors credibly explain that they believed they had disclosed how the proceeds from their refinancing were spent.  The Affidavit also refers to the annuity in the amount of $21,000.

It is unclear why the Debtors' counsel did not further amend schedules B and C to reflect the correct amount of the annuity, and the Statement of Financial Affairs.  There is no indication, however, that counsel's failure to amend the Debtors' schedules was the result of the Debtors' failure to cooperate.  As § 727 must be construed liberally in favor of the Debtors, the court finds the Trustee has not satisfied his burden of showing the inaccurate statements and omissions were made knowingly and fraudulently.

**D.**    *Failure to Explain Loss of Assets: § 727(a)(5)*

Section 727(a)(5) provides that "[t]he court shall grant the debtor a discharge, unless . . . the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."  11 U.S.C. § 727(a)(5).

---

[13] Item 3a on the Statement of Financial Affairs instructs a debtor to list all payments aggregating more than $600 made to any creditor within 90 days immediately preceding the commencement of the case.  Debtors set forth payments made to Direct Merchants in the amount of $1,550 on August 9, 2005, and to the Internal Revenue Service in the amount of $2,129.67 on September 7, 2005.  Both payments were made after the Debtors refinanced their mortgage.  Item 10 asks a debtor to list all property, other than property transferred in the ordinary course of business or financial affairs of the debtor, transferred within one year immediately preceding the commencement of the case.  Debtors checked "None" in response to both questions.  (Pl.'s Ex. A.)

The element of intent to deceive creditors, which is necessary under other subsections of

§ 727, is not required under § 727(a)(5). *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 317

(Bankr. S.D.N.Y. 1994). The Second Circuit has held that

> In order to obtain a denial of discharge under § 727(a)(5), first, the creditor must
> establish a loss or deficiency of assets. If the creditor makes such a showing, the
> debtor has an opportunity to explain the whereabouts of the assets. As long as the
> debtor's explanation is convincing and not rebutted, there is *no need for
> documentary corroboration. See Krohn v. Cromer (In re Cromer)*, 214 B.R. 86,
> 97 (Bankr. E.D.N.Y. 1997) (stating that "as long as debtor's explanation
> convinces the judge that the debtor has not hidden or shielded assets,
> *corroborating evidence by way of documentation is not necessary in every
> instance*").

*D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d at 238–39 (some citations omitted;

emphasis added).

It is not disputed that the majority of the annuity was spent. Thus, the burden shifts to

the Debtors to satisfactorily explain the loss or deficiency. *D.A.N. Joint Venture v. Cacioli (In re*

*Cacioli)*, 463 F.3d 229 (2d Cir. 2006), (citing *Caolo v. McGovern (In re McGovern)*, 215 B.R.

304, 307 (Bankr. D.Conn. 1997)). After reviewing the Debtors' responses to the Trustee's

demand for documents and interrogatories, the court finds the Debtors satisfactorily explained

how the money from the annuity was spent. The Debtors earn a modest income. The budget

filed with their petition shows no sign of extravagance. From all indications, the Debtors used

the annuity to pay ordinary living expenses, without malice or wrongful intent. There was no

rebuttal by the Trustee to the Debtors' explanations. While the Trustee has shown a loss, the

evidence offered at trial provides a reasonable accounting of the proceeds of the annuity.

Accordingly, the Debtors' discharge will not be denied under § 727(a)(5).

**E.      *Failure to Obey Lawful Order: § 727(a)(6)(A)***

Under § 727(a)(6)(A), the court may deny a debtor a discharge if "the debtor has refused, in the case . . . to obey any lawful order of the court, other than an order to respond to a material question or to testify." 11 U.S.C. § 727(A)(6). The Trustee bears the ultimate burden of persuasion in a § 727(a)(6)(A) action, "but the burden of production will shift once the objecting party has shown a violation of a court order." *In re Gardner*, 384 B.R. 654, 669 (Bankr. S.D.N.Y. 2008) (citation omitted). Denial of discharge under this subsection "requires that the debtor willfully and intentionally refused to obey a court order." *Id.* at 669–70. As a result, "a mere failure to obey the order, resulting from inadvertence, mistake, or inability to comply, is insufficient; the party seeking revocation must demonstrate some degree of volition or willfulness on the part of the debtor." *Id.* at 670. While "'§ 727(a)(6) provides that a bankruptcy court shall deny a discharge for failure to obey a lawful court order, case law has demonstrated that the denial is subject to the discretion of the court.'" *Weiss v. Winkler*, No. 98-CV-5742 FB, 2001 WL 423050, at *3 (E.D.N.Y. Mar. 30, 2001) (quoting *In re Beeber*, 239 B.R. 13, 31 (Bankr. E.D.N.Y. 1999) (citing *In re Kokoszka*, 479 F.2d 990, 997 (2d Cir. 1973), *cert. granted sub nom., Kokoszka v. Belford*, 414 U.S. 1091 (1973), *aff'd*, 417 U.S. 642 (1974), *and reh. denied*, 419 U.S. 886 (1974)).

There is no dispute the Debtors invaded the annuity post-petition. Nor, is there any dispute that upon conversion of the case to chapter 7, the Debtors did not attempt to hide the withdrawals from the Trustee. The Trustee asserts that the Debtors' withdrawal of funds from the annuity violated the confirmation order's prohibition of selling or otherwise disposing of property having a value greater than $2,500 without the trustee's consent. The Debtors, however, claimed the annuity exempt. Because there was no timely objection while the Debtors were in chapter 13, the annuity was exempt at the time the withdrawals were made. The evidence

establishes that the Debtors' understanding was that the annuity was not part of the estate and, thus, they were free to access it. As a result, it is impossible to find that the Debtors willfully and intentionally violated the confirmation order. Thus, the court concludes that the Trustee has failed to meet his burden under § 727(a)(6)(A). [14]

## CONCLUSION

Something went awry in this case. The Debtors refinanced the mortgage against their residence shortly before filing for bankruptcy. As a result, when they filed, they had non-exempt cash, rather than equity in their home that could have been claimed exempt. The cash was disclosed on Schedule A; it was not claimed exempt. The conversion of the cash to an annuity was disclosed by the Debtors with the filing of an amended Schedule B, and the filing of an amended Schedule C gave notice that the Debtors claimed the annuity exempt. The cash was never marshaled, and there was no objection to the annuity exemption prior to the Debtors' conversion of their chapter 13 case to chapter 7. Denial of a discharge, however, is the death penalty of bankruptcy. *In re Raymonda*, Ch. 7 Case No. 99-13523, Adv. Pro. 99-91199, slip op. at 4. It is a harsh remedy to be reserved for a truly pernicious debtor. *Soft Sheen Prods., Inc. v. Johnson (In re Johnson)*, 98 B.R. 359, 367 (Bankr. N.D. Ill. 1988). From the evidence before the court and the arguments of counsel, the court cannot conclude that the Leones are not deserving of a discharge.

For the reasons discussed above, it is hereby

**ORDERED**, that the Trustee's objection to the Debtors' exemption is moot; and it is further

---

[14] Given the court's holdings in connection with the Trustee's § 727 causes of action, it need not address the Debtors' arguments regarding the unorthodox date calculations in the orders extending the Trustee's time to object to discharge or laches.

**ORDERED**, that the Trustee's request for a monetary judgment against the Debtors is denied; and it is further

**ORDERED**, that the complaint is dismissed, and a discharge shall be issued to the Debtors.

Dated: December    , 2011

/s/ Robert E. Littlefield, Jr.
Robert E. Littlefield, Jr.
Chief United States Bankruptcy Judge